**EXHIBIT A**



# NEVADA AGREEMENT

# TILE, MARBLE, STONE & TERRAZZO FINISHERS

# NEVADA WORKING AGREEMENT

## ARTICLE I
## PARTIES

This Agreement is entered into this 3rd day of March, 2003 by and between Bricklayers and Allied Craftworkers Local Union No. 13 Nevada (hereinafter the "Union") and the Nevada Tile, Marble, Stone and Terrazzo Contractors Association (hereinafter the "Association"), on behalf of the Association members listed in Appendix B, those employers who subsequently join the Association and those independent employers who agree to become signatory to this Agreement.

## ARTICLE II
## DURATION-TERMINATION-AMENDMENT

This Agreement shall be effective commencing March, 2003 shall continue in full force up to and including February 28, 2006, and shall be automatically continued yearly thereafter unless written notice of intent to negotiate a new Agreement, in whole or in part, is given in writing by either party to the other not later than sixty (60) days prior to the expiration date or any anniversary date thereafter. The parties may at any time mutually agree to change or amend any part of this Agreement; such changes or modifications shall not affect the continuing nature of this Agreement.

## ARTICLE III
## SCOPE OF WORK

Section A. This Agreement shall cover new construction, maintenance, repair and renovation work, except that this Agreement does not apply to any work covered by the "Work Recovery Agreement," within the following Nevada counties: Clark, Esmeralda, Lincoln and the Southern portion of Nye County south of the 38th parallel. In addition, before an Employer, signatory to this agreement, performs new construction, maintenance, repair or renovation work in any county in Nevada north of the 38'h parallel, the Employer will negotiate in good faith with the Union concerning the terms and conditions of employment applicable to such work. No negotiations are required if the Employer chooses to perform such work in accordance with this Agreement.

Section B. This Agreement shall cover the work of Brick Masonry; Stone Masonry; Artificial Masonry; Marble Masonry; Marble, Mosaic and Terrazzo Work; Tile Layers' Work; Pointing-Cleaning-Caulking; Finishers' Work; and Special Categories falling within the jurisdiction of the Union, as defined in Code 1 to the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO, except that this Agreement does not apply to any work covered by the "Work Recovery Agreement" between the parties hereto. The foregoing shall include but not be limited to the work of masons, mechanics, setters (also known as layers), and finishers (including but not limited to, stone finishers, marble finishers, tile finishers, and terrazzo finishers). All work covered by this Agreement shall be assigned to employees represented by the Union. The cutting of materials at the site of construction may be assigned to finishers at the discretion of the Employer.

Initial _____ Union _____
_____ Management

1

SFRDOCS:3034903711033043.1000

Section C. In addition, this Agreement shall cover all other assignments mutually agreed upon between the Employer and the Union on any other building products or systems related to the scope and type of work covered by this Agreement that are determined by these parties to fall within the work jurisdiction of this Agreement.

Section D. Residential work shall be in accordance with the Work Recovery Agreement.

## ARTICLE IV
## MANAGEMENT RIGHTS

The Employer shall have the right to hire, fire, suspend, direct the work force, and manage its business in accordance with its best judgment, including but not limited to the right to exercise complete and exclusive control, management and operation of the Employer's equipment and personnel, the location, and layout thereof and the determination of the nature and scope of the Employer's activities and methods pertaining thereto; the right to introduce new and to modify procedures, methods, processes, facilities and equipment and to make technological changes, the right reasonably to maintain order, safety, security and efficiency and to promulgate, publish and enforce such reasonable rules which in the discretion of management are necessary; the determination of the number of employees, the assignment of duties thereto, the right to direct the work force, including but not limited to scheduling, assigning, laying off, promoting and transferring of its employees.

## ARTICLE V
## UNION RECOGNITION

Section A. The Union claims, and the Employer, having satisfied itself thereof, acknowledges that a majority of the Employer's employees in classifications covered by this Agreement have authorized the Union to represent them in collective bargaining. On that basis, the Employer hereby recognizes the Union under Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), as the exclusive bargaining agent of all of its full-time and regular part-time employees in classifications covered by this Agreement on all present and future job sites within the jurisdiction of the Union. The parties to this Agreement hereby express their intent to create a multi-employer bargaining unit, as to which the Union is the exclusive bargaining agent for the employees under Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), comprised of all Employers who are currently or at any time in the future become members of the Association.

Section B. There shall be open and nondiscriminatory employment on work covered by this Agreement.

Section C. On large scale projects exceeding twenty (20) crews, the Union or the Employer may request a pre job meeting prior to the commencement of any work to discuss such issues as manpower requests, safety issues, job requirements, special concerns, etc.

## ARTICLE VI
## HIRING PREFERENCE & DISPATCH PROCEDURES

Section A. The Union shall operate an exclusive hiring hall. When the Employer has a vacancy, the Employer shall first call the Union's Hiring Hall for referral of applicants. Should the Union be unable to refer the number of applicants requested by the Employer, the Employer can hire from any other source. The

SFRDOCS:30349037.1 038343.1000

Initial _____  _____
         Union  Management

2

---

Employer may discharge any worker for any cause which the Employer may deem sufficient, provided there shall be no discrimination on the part of the Employer against any worker for Union activity.

When an Employer hires workers from a source other than the Union's hiring hall, the Employer will promptly notify the Union in writing of the worker's name, home address and telephone number, and in addition, will send the worker to the Union's hiring hall to obtain a dispatch slip within 48 hours of hire.                     Initial _____

Section B. When requested by the Employer, the Union shall provide via fax a copy of the out of work list The list shall include name, skill level and phone number.

Section C. The Union will establish and implement a dispatching system, and when an employee is dispatched to an Individual Employer, the Union's Employment Office will provide the Individual Employer with a written dispatch slip containing complete and up-to-date information regarding the employee's skill level, the hours reported at that skill level and the immediately preceding skill level, and the Employers for whom the employee has worked during the previous twelve (12) months at that skill level and the immediately preceding skill level.

Section D. The Employer may reject any employee or applicant for employment referred by the Employment Office of the Union. Employees or applicants for employment who are rejected by an Employer shall be paid show-up pay in accordance with the following provisions:

1. Any worker reporting for work at the regular starting time and for whom no work is provided shall receive two (2) hours pay at the stipulated rate, as well as the expense payment, if any, due for the day for reporting, unless he has been notified before the end of the preceding day not to report, or when the employee is prevented from working for reasons beyond the control of the Employer, including but not limited to such factors as inclement weather, or breakdown causing discontinuance of a major unit of work of the project.

2. The Employer shall be relieved of the obligation to pay show-up pay to any employee or applicant who does not possess all of the following minimum qualifications: (a) the ability to communicate as necessary to perform the job safely and efficiently, and (b) proof of eligibility to work in accordance with the Immigration Reform and Control Act. In addition, Marble Masons, Bricklayers, Tile Layers, Journeypersons, Improvers and Finishers must report to the jobsite with all necessary hand tools.

Section E. Notwithstanding anything to the contrary in this Article, the Employer may request by name, in writing, and the Union shall dispatch, if available, any employee that has been previously employed by the Employer.

## ARTICLE VII
## CHECKS, PAY PERIOD, WAGES AND CONTRIBUTIONS

Section A. All employees working under this Agreement shall, be paid in cash or by check weekly by Friday. The Employer may mail employee's paycheck to their home address. Employees electing not to have paychecks mailed may pick their paychecks up at the Employer's local office or at the Employer's job site trailer, before quitting time each Friday. The Employer must provide a timecard for the employees to complete and sign weekly before receiving their paycheck. Alternative satisfactory time reporting methods may be used if approved by the Union. An employee being laid off or terminated shall be given his final paycheck in full for all hours of employment before quitting time

SFRDOCS:30349037.1 038343.1000

Initial _____  _____
         Union  Management

3

## ARTICLE VIII
## TRAVEL-SUBSISTENCE

**Section A.**

1. Employees covered by this Agreement shall be entitled to receive the following expense payments for travel on jobs located over fifty (50) miles from the City Hall of Las Vegas, Nevada:

   0 - 50 Miles      Free Zone
   51 - 70 Miles     $ 21.00 per day
   Over 71 Miles     $ 44.00 per day

   If requested by the Employer to stay the weekend: $ 55.00 per day, during the weekend only.

2. The expense payments established under Paragraph (1) will be paid to any employee who is required to report and does in fact report for work.

3. The expense payment is not subject to proration under any circumstance.

4. Mileage measured for the purpose of this section is defined as from the Las Vegas City Hall to where construction is being performed per AAA mileage.

5. The area within the city limits of Boulder City and Primm, Nevada shall be considered free zones.

6. Employees eligible for pay zone pay under section 1 above, shall also be paid driving time as follows:

   0-50 miles ................................................. 0 hours at straight time
   50-100 miles ............................................ 1 hour at straight time For every portion
   of each additional 50 miles thereafter ........... 1 hour at straight time

## ARTICLE IX
## FOREMEN

**Section A.**

1. Foremen shall be selected by and be the representative of the Employer, and shall be a Journeyperson Mechanic of the trade they supervise.

2. There shall be an employee designated as Foreman on all jobs employing four (4) persons. The Foreman will receive fifty cents ($.50) per hour above the Journeyperson wage rate.

3. A Foreman supervising five (5) or more persons will receive one dollar and twenty five cents ($1.25) per hour above the Journeyperson wage. The number of covered employees to be supervised by a working Foreman is subject to the Employer's discretion.

Initial _____ Union _____ Management _____

SFRDOCS:30349037.1 0383043.1000

---

**Section B.** The right to pay by check shall be denied any Employer whose checks fail to be honored.

**Section C.**

1. The total hourly wage package for Bricklayer, P.C.C., Tile Setter, Marble Mason, Terrazzo Worker, Finisher, etc., working under this Agreement shall be as shown in Appendix A. The total hourly wage package for a Certified Welder working under this Agreement shall be two dollars and fifty cents ($2.50) above his/her normal hourly wage rate, only while doing welding work.

2. The total hourly wage package payable under this Agreement shall automatically be adjusted per Appendix A. The total hourly wage package payable under this Agreement shall be automatically adjusted per Appendix A. In the event of unanticipated or unforeseen benefit cost increases (e.g., Health & Welfare insurance premiums), either the Union or the Association may request that the parties meet to consider changes to Appendix A; provided, however, that neither party may take economic action in support of its position.

3. Tile setters, Marble Masons, Finisher, Bricklayers, etc., who do not presently qualify as Journeyperson Mechanics shall be classified as Apprentice Improvers at the pay scale in accordance with their actual abilities or qualifications as determined by the Employer in conjunction with the Union and will be based on a percentage of the Journeyperson rate. The Employer has the right to lay off any employee, provided the reason is without discrimination because of age, race, color, religion, sex or national origin.

**Section D.** The parties to this Agreement recognize that in order to protect and preserve certain segments of the masonry industry, special total hourly wage package rates and working conditions may be necessary. Therefore, upon notice to all signatories to this Agreement, if the parties to this Agreement engaged in such segment of the industry mutually agree that special rates and conditions are necessary, they will negotiate said wages and conditions for those segments of the masonry industry and reduce their understanding to writing.

**Section E.** On a prevailing wage rate job, should the state or federal prevailing wage package be lower than the wage package established by this Agreement, the Employer shall have the right to pay the lower package. The Employer shall agree to fill out Prevailing Wage Forms at least one week prior to the due date, and submit them to the Labor Commissioner.

**Section F.** The Employer has the right to evaluate any employee's performance and to reject any employee, provided it is without discrimination.

Initial _____ Union _____ Management _____

SFRDOCS:30349037.1 0383043.1000

4

6

4. A Foreman supervising thirty (30) or more persons shall be known as a general foreman and receive three dollars ($3.00) per hour above the Journeyperson wage. The number of covered employees to be supervised by a working Foreman is subject to the Employer's discretion.

5. The Employer, upon approval of the Employee and the Union, may provide compensation to the Employee in a manner other than the hourly Foreman rate, provided that the compensation is of equal or greater value.

## ARTICLE X
## APPRENTICES

Section A. In order to train sufficient skilled mechanics for the industry, the parties to this Agreement recognize and encourage the necessity for employment of apprentices. It is understood and mutually agreed that the employment of apprentices shall be in accordance with the standards adopted by the Joint Apprenticeship and Training Committee which are incorporated herein by reference.

Section B. Apprentices shall be paid the following percentages of the Journeyperson basic hourly pay rate. (Periods to be based on 750 hours each.)

**Apprentice Wage Structure**

Titesetter/Marble Mason -- Apprentices

| | |
|---|---|
| 1st period-6 mos.-750 hours | 50% |
| 2nd period-6 mos.-750 hours | 60% |
| 3rd period-6 mos.-750 hours | 70% |
| 4th period-6 mos.-750 hours | 80% |
| 5th period-6 mos.-750 hours | 85% |
| 6th period-6 mos.-750 hours | 90% |

Bricklayer-Apprentices

| | |
|---|---|
| 1st period-6 mos.-750 hours | 50% |
| 2nd period-6 mos.-750 hours | 60% |
| 3rd period-6 mos.-750 hours | 70% |
| 4th period- 6 mos.-750 hours | 80% |
| 5th period- 6 mos.-750 hours | 85% |
| 6th period- 6 mos.-750 hours | 90% |

Finisher Tile/Marble

| | |
|---|---|
| 1st Period-300 hours | 60% |
| 2nd Period-300 hours | 70% |
| 3rd Period-300 hours | 80% |
| 4th Period-300 hours | 85% |
| 5th Period-300 hours | 90% |

SFRDOCS\30346037.1 0383043.1000

Initial _____ Union _____ Management _____

---

7

Benefit contributions for apprentices shall be as detailed on Appendix A. The parties acknowledge that a formal apprentice program is a necessity in preserving the trade and the skills required to construct masonry projects.

Section C. If a Journeyperson Finisher is reclassified as a Tile Setter Apprentice, the employee shall start at a pay rate no less than that of a Journeyperson Finisher.

Section D. The J.A.T.C. shall develop and approve its own test for rating the skill level of an employee prior to hiring in order to determine the appropriate pay scale.

Section E. An Employer may not assign overtime work to an apprentice if the assignment would interfere with the apprentice's classroom attendance.

## ARTICLE XI
## CHECK-OFF AND LOCAL DUES

The Employer shall deduct from the basic hourly pay of each employee who has signed a check-off authorization conforming to applicable law, and transmit monthly to the Union (or to any agencies designated by the Union for the collection of such money), the sum for each hour paid which the Union specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to the Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The employer will deduct check off dues upon receipt of dues check off authorization card. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the names of each person whose dues are being paid and the number of hours each employee has been paid. By 1/1/2001, check-off dues after forty (40) hours in a week will be reduced to one percent (1%).

Section A. All Check-Off Dues shall be paid on the 15th day of the month for all hours paid for employment during the previous month, and in such a manner as the Union requires. The Union shall have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of Dues Check Off deductions and payments. If the Employer is found, as a result of an audit ordered by the Union, to have been more than six percent (6%) inaccurate in reporting, the Employer shall be charged the full costs of such audit, in addition to the applicable delinquent Dues Check Off funds and any attorneys' fees required for such collection.

Delinquent Contributions. If an Employer fails to make contributions by the 15th day of the month for all hours paid for employment during the previous month, interest shall immediately accrue at the rate of 14% per annum and liquidated damages will be immediately assessed in accordance with the terms of the applicable Trust Agreements. If it becomes necessary for the Trustees to initiate legal action to collect delinquent benefit and fund contributions required by this Article, the Employer will be responsible for all attorney's fees incurred by the respective Trustees.

SFRDOCS\30349037.1 0383043.1000

Initial _____ Union _____ Management _____

8

Section B. If the Employer fails to make any contributions specified in this Article within ten (10) days after the date required by the Union, the Union shall have the right to file a grievance under the expedited grievance and arbitration procedure provided hereby, without regard to any limitations periods set forth anywhere in this Agreement for the filing of grievances, or to commence litigation, to recover the delinquency. If the Union elects to proceed by filing a grievance, that grievance shall be commenced at the level of the Joint Labor Management Committee (as provided for elsewhere in this Agreement), which shall have seven (7) calendar days within which to attempt to resolve the dispute. The Employer which is alleged to be delinquent shall not sit on the Joint Labor Management Committee for the purpose of considering this dispute (i.e., its own case). If the Joint Labor Management Committee is able to resolve the dispute by majority vote within seven (7) calendar days, its resolution of the dispute shall be final and binding upon all parties. If the Joint Labor Management Committee is unable to resolve the dispute within seven (7) calendar days, the dispute will be referred to expedited arbitration before one of the arbitrators listed in Appendix B hereto. The Joint Labor Management Committee will randomly select names from Appendix B, will contact each arbitrator in the order selected, and the first such arbitrator who is available to hear the dispute within seven (7) calendar days after the dispute is referred to him or her will be mutually agreed by all parties to serve as the Arbitrator for the dispute. The Arbitrator shall hold a hearing on the dispute within seven (7) calendar days after the dispute is referred to him or her, and shall decide the dispute within seven (7) calendar days after the close of the hearing or after the submission of any post-hearing briefs (where the parties agree to submit post-hearing briefs), whichever comes last. The Arbitrator's decision shall be final and binding upon all parties. Where the Union prevails either before the Arbitrator or before a court, the Employer shall be liable for all costs of collection of payments due together with attorneys' fees, statutory costs, litigation expenses and arbitrator's fees. Pending the resolution of the dispute by the Joint Labor Management Committee, the Arbitrator or the Court (where the Union elects to proceed before the Court in the first instance), the no-strike clause set forth elsewhere in this Agreement shall apply. Where the Employer fails to comply fully within twenty-four (24) hours of the final and binding decision of the Joint Labor Management Committee, the Arbitrator, or the Court (where the Union elects to proceed before the Court in the first instance), however, the no-strike clause shall no longer apply and the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement and/or the final and binding decision of the Joint Labor Management Committee, the Arbitrator, or the Court.

## ARTICLE XII
## JOINTLY TRUSTED FUNDS

Section A. Except as otherwise provided herein, in addition to the basic hourly pay contained in Article VII, Section C, the Employer agrees to pay the contributions specified in that section to the following designated funds:

1. Bricklayers and Trowel Trades International Pension Fund

   International Pension Fund

   (a) The contribution to the Bricklayers and Trowel Trades International Pension Fund (IPF) shall be as listed in Appendix "A" for each hour or portion thereof for which a covered employee receives pay.

   (b) The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust dated 1 July 1972.

Initial _____ Union _____ Management

SFRLDOCS 30349017.1 036304.1000

2. Bricklayers and Allied Craftworkers Local 13 Health & Welfare Trust

   Health and Welfare Trust

   (a) The contribution to the Bricklayers and Allied Craftworkers Local 13 Health & Welfare Trust shall be as listed in "Appendix A" for each hour or portion thereof for which a covered employee receives pay.

   (b) The payments required above shall be paid to the Bricklayers and Allied Craftworkers Local 3 Health & Welfare Trust, which was established under a Trust Agreement dated October 19, 2000.

3. International Masonry Institute And Local JATC

   International Masonry Institute

   (a) The contribution to the International Masonry Institute (IMI) shall be as listed in Appendix "A" for each hour or portion thereof for which a covered employee receives pay.

   (b) The payments required above shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, 14 March 1991, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust dated 22 July 1970) and the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust dated 6 November 1974).

   (c) The Union and the Association shall form a Joint Apprentice Training Committee ("JATC"), consisting of at least three (3) members from labor and three (3) members from management, with at least one (1) of the members from management being a brick masonry contractor. Each side shall have an equal vote on all business conducted by the JATC.

   (d) Funds required for operation of the JATC will be collected and provided monthly by IMI. IMI will report collections and expenditures to the JATC in a format acceptable to the JATC, which the JATC shall develop in cooperation with IMI. Two-thirds (2/3) of all apprenticeship funds collected will be used in Southern Nevada under the direction of the JATC. If two-thirds (2/3) of all apprenticeship funds collected are not used in Southern Nevada, and/or if IMI fails to use the format developed by the JATC for reporting collections and expenditures, the JATC shall meet to consider and decide what appropriate action should be taken. Such action may include discontinuing contributions to IMI and redirecting the same contributions to a jointly trusteed fund to be used by the JATC for apprenticeship training in Southern Nevada.

Initial _____ Union _____ Management

SFRLDOCS 30349017.1 036304.1000

Section C. The Employer agrees that the Trustees on the Boards of Trustees may be selected in accordance with the terms of the Plans' respective Agreements and Declarations of Trust, and waives any right to participate in their selection.

Section D. For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section A of this Article. Such payments shall be made for all actual hours worked and shall not include employer payment for bonuses, subsistence, travel time, or premiums.

Section E. Except as otherwise provided herein, contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, Journeypersons and apprentice employees.

Section F. All contributions shall be paid on the 15th day of the month for all hours paid for employment during the previous month, and in such a manner as the Trustees require. The Trustees shall have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section A of this Article. If the Employer is found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been six percent (6%) inaccurate in reporting, the Employer shall be charged the full costs of such audit, in addition to the applicable delinquent contribution, any attorneys' fees required for such collection and the liquidated damages established by the Board of Trustees.

Section G. Third Party Administrator. The Union and the Association will select a third party administrator to collect and disburse all contributions required by this Article. Each Employer will receive a single remittance form for payment of all contributions required by this Article.

Section H. Delinquent Contributions. If an Employer fails to make contributions by the 15th day of the month for all hours paid for employment during the previous month, interest shall immediately accrue, at the rate of 14% per annum and liquidated damages will be immediately assessed in accordance with the terms of the applicable Trust Agreements. If it becomes necessary for the Trustees to initiate legal action to collect delinquent benefit and fund contributions required by this Article, the Employer will be responsible for all attorney's fees incurred by the respective Trustees. Initial _____

Section I. If the Employer fails to make any contributions specified in this Article within ten (10) days after the date required by the Union, the Union shall have the right to file a grievance under the expedited grievance and arbitration procedure provided hereby, without regard to any limitations periods set forth anywhere in this Agreement for the filing of grievances, or to commence litigation, to recover the delinquency. If the Union elects to proceed by filing a grievance, that grievance shall be commenced at the level of the Joint Labor Management Committee (as provided for elsewhere in this Agreement), which shall have seven (7) calendar days within which to attempt to resolve the dispute. The Employer which is alleged to be delinquent shall not sit on the Joint Labor Management Committee for the purpose of considering this dispute (i.e., its own case). If the Joint Labor Management Committee is able to resolve the dispute by majority vote within seven (7) calendar days, its resolution of the dispute shall be final and binding upon all parties. If the Joint Labor Management Committee is unable to resolve the dispute within seven (7) calendar days, the dispute will be referred to expedited arbitration before one of the arbitrators listed in Appendix B hereto. The Joint Labor Management Committee will randomly select names from Appendix B, will contact each arbitrator in the order selected, and the first such arbitrator who is available to hear the dispute within seven (7) calendar days after the

Initial _____ Union _____ Management

SFRDOCS:3034903711 0353043.1000

---

4.  Local Pension

The contribution to the Local Pension Fund shall be in accordance with Appendix "A" per hour to a tax deferred annuity paid by the Employer for each hour worked for all employees covered by this Agreement. The plan may allow for employee elective deferrals up to the legal limits. All administrative expenses will be absorbed by the participants from contributions made. There will be no less than four Trustees, two from Labor, and two from Management as approved by a two-thirds (2/3) majority vote, one vote per Employer (for Management side). Administrative expenses will be defined as costs necessary to administer the Pension Fund, and will not apply to costs incurred by the Employer or any outside sources. The Local Pension Fund shall take effect June 1, 1997.

5.  Craftworkers/Masonry Industry Compliance Trust

A fund known as the Craftworkers/Masonry Industry Compliance Trust has been established by an Agreement and Declaration of Trust dated February 12, 2002 which may be subsequently amended by the parties.

The Employers agree to abide by said Agreement and Declaration of Trust, to accept the appointed Board of Directors. and further, to make payments to the Fund in the amount designated in Appendix "A" of this Agreement. Participation by the Employers in said Trust shall be for the duration of this Agreement and any renewals or extensions thereof, or for the period workmen are employed under the terms of this Agreement. In the event the Trust ceases operations and is dissolved, payments to the Trust shall cease and then be applied to employees' wages.

6.  Contract Administration Fund

The Contract Administration Fund is a fund known as the Tile, Marble, Stone and Terrazzo Contractors Association, Inc. Contract Administration Fund. Contributions to the Contract Administration Fund shall be as listed in Appendix A.

Section B. The Employer agrees to be bound by and to the above stated Agreements and Declarations of Trust as though it had actually signed the individual documents, to the extent required by law and as necessary to make benefit contributions, provide reporting and all information and notices reasonably required for the operation of the funds and be subject to provisions governing enforceability and means of enforcement of trust obligations, and the consequences of nonpayment of such contributions as and when due, and the Employer further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trust; provided, however, that except as may be required by law or by mutual agreement of the parties, the Employer shall not be required to pay more in benefit contributions than is provided for by this Agreement. Notwithstanding actions that may be taken by the Trustees to increase such contributions, the parties acknowledge that the Employer has no control over the actions of the Trustees who were in office as of the signing of this Agreement, or over the administration of the several Agreements and Declarations of Trust. The Employer and the Union agree that said Agreements and Declarations of Trust are incorporated herein only to the extent necessary to implement this Agreement.

Initial _____ Union _____ Management

SFRDOCS:3034903711 0353043.1000

10

11


12

dispute is referred to him or her will be mutually agreed by all parties to serve as the Arbitrator for the dispute. The Arbitrator shall hold a hearing on the dispute within seven (7) calendar days after the dispute is referred to him or her, and shall decide the dispute within seven (7) calendar days after the close of the hearing or after the submission of any post-hearing briefs (where the parties agree to submit post-hearing briefs), whichever comes last. The Arbitrator's decision shall be final and binding upon all parties. Where the Union prevails either before the Arbitrator or before a court, the Employer shall be liable for all costs of collection of payments due together with attorneys' fees, statutory costs, litigation expenses and arbitrator's fees. Pending the resolution of the dispute by the Joint Labor Management Committee, the Arbitrator, the Arbitrator or the Court (where the Union elects to proceed before the Court in the first instance), the no-strike clause set forth elsewhere in this Agreement shall apply. Where the Employer fails to comply fully within twenty-four (24) hours of the final and binding decision of the Joint Labor Management Committee, the Arbitrator, or the Court (where the Union elects to proceed before the Court in the first instance), however, the no-strike clause shall no longer apply and the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement and/or the final and binding decision of the Joint Labor Management Committee, the Arbitrator, or the Court. This provision shall be without prejudice to the rights of the fringe benefit trustees, who shall not be bound hereby.

Section J. Any Employer which has been habitually delinquent in paying trust fund contributions and/or dues check-off to the Union, to the BAC, to any of the appropriate Trust Funds, or to any Local of the BAC, shall post a bond in an amount equal to the Employer's highest two months of trust fund contributions and dues check-off in the immediately prior twelve (12) months, or in the alternative may deposit cash or a certified check in the same amount in an escrow account designated by the Union. In the event that such an Employer does not have a sufficient "track record" of payments over the immediately prior twelve (12) months to permit the amount of the bond, cash deposit or certified check to be calculated in the manner described in the previous sentence, the amount of the bond, cash deposit or certified check shall be equal to one-half (½) of the estimated value of the trust fund contributions and dues check-off to be paid by the Employer in the immediately following twelve (12) months, based upon the work the Employer is currently performing and anticipates to be performing during that period. In such a case, the Employer will disclose all relevant information regarding its current and anticipated work to the Union, so that the Union may set the amount of the bond, cash deposit or certified check. Additionally, any Employer which has been habitually delinquent in paying trust fund contributions and/or dues check-off to the Union, to any of the appropriate Trust Funds, or to any Local of the BAC, shall have a pre job conference with the Union prior to commencing work on any project of more than $200,000 in value, and shall post a bond in an amount equal to one-half (½) of the estimated value of the trust fund contributions and dues check-off to be paid for the project, or in the alternative may deposit cash or a certified check in the same amount in an escrow account designated by the Union. For the purposes of this provision, "habitually delinquent" shall mean three (3) or more months (whether consecutive or not) of delinquencies within any twelve-month period.

## ARTICLE XIII
## GRIEVANCE PROCEDURE

Section A. It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions shall be settled in accordance with the grievance procedure set forth in this Article, except as to those controversies for which an alternative grievance procedure is provided elsewhere in this Agreement. No grievance shall be recognized unless it is called to the attention of the Employer by the Union or to the attention of the Union by the Employer within ten (10) working days after the alleged violation is committed or discovered. All Grievances to be processed shall be in writing. The term working days shall be defined as Monday through Friday, inclusive.

Initial _____ Union _____ Management _____

SFRDOCS:30349037.1 018043.1000

13

Section B. Grievances shall be handled in the following manner:

1. The grievance shall be referred to the job-site Union Steward and to the Foreman for adjustment.

2. If the grievance cannot be settled pursuant to Paragraph (1) of this Section, the grievance shall be referred to the Business Manager or the Field Representative of the Union, and the Employer.

3. If the grievance cannot be settled pursuant to Paragraph (2) of this Section within thirty (30) working days, excluding weekends and holidays, the grievance shall be submitted within 48 hours to the Joint Labor Management Committee for consideration and settlement.

If the Joint Labor Management Committee cannot reach a satisfactory settlement within thirty (30) working days, not including weekends and holidays, following a referral of the grievance to the Committee, the dispute shall, if the parties agree, be submitted to the International Masonry Institute's Dispute Settlement Plan for such steps as are deemed appropriate in accordance with the procedures of the Plan, or to one of the designated arbitrators listed on Appendix C. For the first dispute arising between the parties, if they are unable to agree on one of the designated arbitrators, the parties shall start at the top of the list and proceed downward until an available arbitrator is found. For subsequent disputes, the parties shall start with the next arbitrator on Appendix C. The arbitrator shall have no authority to add to or modify any of the terms or conditions of this Agreement, and the expenses of the arbitration shall be borne equally by the Employer and the Union.

Section C. When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provided, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section B of this Article, the parties agree that such settlements shall not be precedent-setting.

## ARTICLE XIV
## SUBCONTRACTING

Section A. The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

Section B. All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE XV
## PRESERVATION OF WORK
## (ANTI-DOUBLE BREASTING)

Section A. In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: if and when the Employer shall perform any work of the type covered by this Agreement at the site of a commercial, light commercial, or custom home construction project (excluding tract homes, residential work) under its own name or under the name of another, as a

Initial _____ Union _____ Management _____

SFRDOCS:30349037.1 018043.1000

14

corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly any degree of management or control, the terms and conditions of this Agreement shall be applicable to all such work.

Section B. All charges of violations of Section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XIII of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XIII is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

Section C. If, as a result of violation of this Article, it is necessary for the Union and/or the Trustees of the joint Trust Funds to institute court action to enforce an award rendered in accordance with Section B above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the Fund Trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XVI
## STEWARDS, REPORTING PAY, WORK RULES, SAFETY

Section A. Rules Applicable to All Covered Employees:

1. The Union may select, and the Employer shall approve, a working steward from among employees on all jobs upon which more than five (5) covered employees are working. (Either party has the right to object to the Steward that is selected.) Such working steward shall not be discharged for fulfilling his/her stewardship duties. Otherwise the Employer's rights shall fall under Articles IV and VII of this Agreement. The Steward shall have a reasonable amount of time to perform his/her duties. The duties of the working steward shall not interfere with work productivity. The working Steward shall refer any disputes or grievances to the business manager or field representative of the Union. All disputes and grievances shall be processed in accordance with the grievance procedure Article XIII of the Agreement.

2. Any employee reporting for work at the regular starting time and for whom no work is provided, shall receive two (2) hours pay at the stipulated rate, as well as the expense payment, if any, due for the day, for reporting unless he has been notified before the end of the preceding shift not to report, except when (a) the employee is prevented from working for reasons beyond the control of the Employer, including but not limited to such factors as inclement weather, or breakdown causing discontinuance of a major unit of the project, or employee does not possess his/her own hand tools, safety shoes and hard hat, required to do his work, excluding all power tools.

15

(a) Each Tile Layer shall furnish the following equipment:

Regular cutting board
Framing square
Side biters and large biters
Rubber mallet and beating block
Level, 2'0" and 4'0"
Chalk box and line
Claw hammer
12' steel tape
1/4" and 1/2" chisel (tipped)
Flat trowel
Wood float
1/4" notched Trowel
3/8" or 1/2" notched trowel
3/16" V-notched trowel (mastic)
Gauging, margin or pointing trowel
Wire cutter (tin snips)
Staple gun or hammer
Hawk
Mortar Board and stand
Rubbing stone
Knee Pads
Hard hat

(b) Each Finisher shall furnish the following equipment:

1/4" Chisel or screwdriver
Regular rubber gloves
Margin or Pointing trowel
Hard hat
Knee Pads
50' hose
Two 3-gallon buckets
Steel flat trowel; if required by employer
One hand mixer (such as "potato master")
One floor and Wall Groutmaster (such as or equal to brand sold by American Olean)
One Hoe
One Shovel
Six 12-Quart Buckets
One Broom

SFRDOCS:30349037.1 083043.1000    Initial _____ Union _____ Management _____

SFRDOCS:30349037.1 083043.1000    Initial _____ Union _____ Management _____

17

(c) Each Brick Mason shall furnish the following equipment:

Hard Hat
Boots
Strikers
Hammer
2' Level
4' Level
Chalk Snap Line
Tape Measure
Pliers
Margin Trowel
Brick Trowel
Tuck Point
1/2" Chisel
3" Chisel
Razor Knife
Chalk Line
Knee Pads
Hard Hat

3. Employees must be paid for going from one job to another during working hours and shall not use any of the lunch hour in making such a job transfer.

4. The Setters and Finishers shall be paid an additional one dollar ($1.00) per hour when working with Epoxy, and shall be provided proper safety equipment.

5. Employees shall not be required to work more than five (5) hours consecutively without a half-hour (1/2) meal break.

6. The Employer shall provide potable water if it is not available at the job site.

7. The Employer shall furnish, at the jobsite, all necessary power tools and proper extension cords to ensure quality and safety of equipment. An employee who intentionally, or as a result of gross negligence, loses or damages Employer-supplied equipment, shall be responsible to replace or pay for it. (As allowed by city, state, and federal law.)

(d) Each Marble Mason shall furnish the following equipment:

Hammers (brick, stonesledge, rawhide, dead blow, rubber mallet)
Chisels (pitching tools, carbide point, cold chisels)
Trowels (margin, tuck pointers, brick)
Tape Measure
Levels (2 foot, 4 foot)
Plumb Bob
Brush
Straight Edges
C-Clamps
Bar Clamps
Square
Razor Knife
Pencils
Line
Wire Cutters Plyers
Blow Ball
Suction Cups
Grout Bag
Plug Wood
Plaster Spoon
Putty Knife
Wood Wedges
Pry Bars,
Caulking Gun
3 Three or Five Gallon Buckets
2 Plaster Buckets
Arising Stone or Sanding Block
Tin Snips

8. The employee shall furnish his own hand tools, level and other tools of the trade excluding all power tools. All employees are required to furnish and wear on the job site safety work shoes and hard hats, in accordance with OSHA requirements.

9. The Employer shall not base pay or other compensation on a predetermined amount of work or output by the employee; and the Union shall not countenance any limitation on the productivity of the Employer's work force.

10. A duly accredited representative of the Union shall be given the right, by the Employer, to visit the jobsite for the purpose of talking with covered employees, including but not limited to, the investigating of complaints, grievances, etc., during work hours, but in a manner that does not unreasonably interfere with the work assigned to employees. All jobsite locations shall be provided upon request. Violation of this Article can result in a penalty, payable to the Apprenticeship and Training Committee; the penalty shall be up to $500.00 under the provisions of the grievance procedure.

11. The Employer will supply all respirators, and/or dust masks, or any OSHA required safety equipment as required.

12. The Union and/or the Employer will inform the Health & Welfare Trust of any members working for non-signatory employers. The Trust, upon reliable evidence and for good cause, may take any action consistent with the Trust Agreement and applicable law, including but not limited to, suspending the member's health and welfare benefits and/or canceling the member's bank of hours.

Section B. Rules Applicable to Bricklayers and Stone Masons:

1. No wall shall be built over five feet, four inches (5'4") in height from the floor or scaffold. No foot plank shall be built higher than the wall, excluding fences.

SFRDOCS:30340937.1 030343.1000

Initial _____ Union _____ Management _____

Initial _____ Union _____ Management _____

18

2. Mortar boards shall be blocked or set on stands at least sixteen (16) inches above scaffold or floor. This provision shall not apply to stem walls.

3. Employees on refractory jobs necessitating a change of clothing due to nature of the work shall be allowed fifteen (15) minutes to wash up, change clothing and clean tools.

Section C: Rules Applicable to Tile Setter, Bricklayer, and Marble Masons, etc. Journeyperson of Union Status.

Whenever a Journeyperson does work defective or below standards, due to no other cause by others, as determined by the Employer, it shall be the duty of the Union Business Representative to immediately investigate and, if the complaint is found to be justified, to order the employee to repair the work without further compensation from the Employer, provided the Employer furnishes the materials to make such repairs.

## ARTICLE XVII
## HOURS OF WORK, OVERTIME SHIFTS, AND HOLIDAYS

Section A. Hours. The standard work day shall consist of eight (8) continuous hours of work between the hours of 5:30 a.m. and 4:30 p.m., with the requirement that all employees take a 30-minute unpaid lunch period occurring in the middle of the shift. There shall be no set time for coffee breaks. Some time between starting the shift and lunch, a ten (10) minute break will be allowed at the employee's work station. Grievances with respect to this break shall be processed in accordance with Article XIII of this Agreement. The standard work week shall consist of five (5) standard work days commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by the Employer in accordance with job site requirements established by the general contractor and upon notice to the Union.

Section B. Overtime. All work in excess of forty (40) hours during the established work week shall be paid at the rate of one and one half (1-1/2) times the hourly base wage rate in effect.

1. Employees will be paid double time for hours worked on Union recognized Holidays.

2. Employees will be paid double time on Sundays if forty (40) straight time hours have been worked during that week. (In the event that a Holiday falls within the workweek, employees will be paid the double time rate on Sunday.) If forty (40) straight time hours have not been worked during that week, Employees will be paid at one and one-half (1-1/2) times the hourly wage rate for Sunday work.

3. Employees will be paid one and one half (1-1/2) times the hourly wage rate for all hours worked over eight (8) in a single day.

4. Work performed on Saturday will be paid at one and one-half (1-1/2) times the regular wage rate, in accordance with Article XVII, Section D.

There shall be no mandatory overtime.

Section C. Shifts. Notwithstanding the terms of Section B, the parties to this Agreement recognize the desirability and in some cases the absolute necessity of working shifts. The straight time work week shall start with the day shift on Monday and end at the conclusion of the second or third shift on the fifth day. In the event the second or third shift extends into a Holiday, a Saturday or a Sunday, employees shall be paid at the regular shift rate.

19

1. The first shift shall be the regular day shift insofar as computing wage payments is concerned, and the first day shift shall work a regular eight-hour shift, with a one half-hour unpaid lunch period midway through the shift.

2. If two work shifts are established, the second shift shall consist of eight (8) hours of continuous work, with a one half-hour unpaid lunch period midway through the shift. Employees working on the second shift shall receive eight hours times the basic straight time rate plus twenty five cents $ .25 for each of those eight hours.

3. If three work shifts are established, the third shift shall consist of seven hours of continuous work, plus one half-hour unpaid lunch period midway through the shift. Employees working on the third shift shall receive the basic straight time rate plus three dollars and twenty five cents $3.25 for each of those seven hours.

4. Time worked in excess of seven hours on the third shift shall be paid at the appropriate overtime rate.

Section D. In the event it is not possible to work Monday through Friday on the normal eight (8) hours per day workweek because of weather conditions, or a breakdown of a piece of major equipment on the jobsite, up to eight (8) hours of work on Saturday may be performed at straight time pay during normal working hours, provided that the total amount of straight time pay in the week cannot be more than forty (40) hours. In the event that an Employee misses a regularly scheduled work day, and the Employee agrees, that day can be made up by working Saturday at the straight time rate, upon written notice to the Union; however, the employee cannot be disciplined for refusing to work on Saturday for the straight time rate. If an Employer fails to make work available during the work week, work performed on Saturday will be paid at one and one-half (1-1/2) times the regular straight time rate.

Section E. Holidays. The Employer agrees to recognize the following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veterans Day, Thanksgiving Day, Friday following Thanksgiving Day, and Christmas Day. Any holiday falling on a Sunday will be observed on the Monday following.

## ARTICLE XVIII
## NO-STRIKE/NO-LOCKOUT

Section A. It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XIII have been exhausted, and then only in the event a party fails or refuses to abide by a final decision under Article XIII of this Agreement or as permitted by Article XI(B) or Article XII(G), provided that refusal by any employee to pass through a lawfully permitted picket line will not constitute a violation of this Agreement.

Section B. It is understood and mutually agreed that in the event the Union enters into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the masonry market or certain geographic areas, those same terms and conditions of employment will be made available to the Employer on the specified projects, particular segments of the masonry market or in those geographic areas covered. The only exceptions to this

Initial _____ Union   _____ Management

SFRDOCS.10349037.1.0313043.1000

Section B. This Agreement together with Schedule A constitutes the entire Agreement between the parties.

This Agreement shall be effective commencing March 3, 2003, and shall continue in full force until such date as a new Collective Bargaining Agreement is negotiated.

21

---

provision are (1) those initial agreements that are signed with newly organized employers to provide a bridge between those rates which are initially established and those which prevail for signatory contractors in the masonry market in which the newly organized contractor is going to operate. Any instance in which a job is bid to be completed during a particular contract period, and the job is delayed for reasons beyond the contractor's control so that it falls into a later contract period, and the Union agrees (which will not be unreasonably withheld), the work will be performed under the wage rates in effect when the work was expected to be done. Should any question arise as to the meaning and application of this provision, either party may file with the other a written complaint. Such complaint will be initiated as stated in Article XIII of this Agreement (referred to Joint Labor Management Committee), and shall be processed in accordance with the procedure for the handling of grievances and the final and binding arbitration of disputes.

## ARTICLE XIX
## SEPARABILITY AND SAVINGS PROVISION

It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect. In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

## ARTICLE XX
## JOINT LABOR-MANAGEMENT COMMITTEE

The various individual contractors signatory to this Agreement and the Union shall establish a Joint Labor-Management Committee consisting of three (3) representatives selected by the signatory Employers as a group and three (3) representatives selected by the Union, to discuss matters of common concern and interest, to review conditions in the industry, to work for the betterment of the industry, to develop programs for additional work opportunities for parties covered by this Agreement, to perform other mutually beneficial activities and other activities permitted by law, and where necessary, to resolve disputes over the interpretation and application of this Agreement. The Board shall meet no less than once every other month and whenever necessary between such meetings. The Employer and Union representatives at a session shall have an equal number of votes on all matters coming before the Joint Labor Management Committee regardless of the number of Employer or Union representatives present at a session, a minimum of five (5) required to make a quorum. The Joint Labor Management Committee Members (for Management side) shall be approved by the Signatory Employers by a two-thirds (2/3) majority vote, one vote per Employer.

## ARTICLE XXI
## GENERAL UNDERSTANDING

Section A. The parties to this Agreement agree to cooperate in meeting conditions peculiar to a job or project on which the Employer maybe engaged. They will at all times meet and confer respecting any questions or misunderstandings that may arise under the performance of this Agreement.

10

---

Initial _____ Union   _____ Management

SFRLIBOCS:30149037.1 0393043.1000

Initial _____ Union   _____ Management

SFRLIBOCS:30149037.1 0393043.1000

22

SIGNATURE PAGE

B.A.C. LOCAL UNION NO. 13, ORGANIZING/LABOR BARGAINING AGREEMENT

Signed this _____ day of _____, 2003.

Signature _____

Print Name _____ Raymond Keen
President
B.A.C. Local #13, Nevada
3640 S. Highland
Las Vegas, Nevada 89103

Title _____

Company _____ Larry O'Leary
Secretary/Treasurer
B.A.C. Local #13, Nevada
3640 S. Highland
Las Vegas, Nevada 89103

Address _____

City, State, Zip _____

Phone _____ Fax _____

SIGNATURE PAGE
NEVADA TILE, MARBLE, STONE AND TERRAZZO
CONTRACTORS ASSOCIATION

Signed this 3rd day of March, 2003.
Signature _____

Robert F. Herman _____ Nick G. Mamula

Signature _____

Mark E. Fenstermaker _____ Printed Name

Initial _____ Union   Management _____

SFPBDOCS 30149037.1 0183043.1000

---

23

APPENDIX B

Members of the Nevada Tile, Marble, Stone and Terrazzo Contractors Association as of January 29, 2001

Superior Tile and Marble, Inc.
T. Nicholas and Company
Western Tile & Marble Contractors, Inc.

Initial _____ Union   Management _____

SFPBDOCS 30149037.1 0183043.1000

299373
3rd

SIGNATURE PAGE

B.A.C. LOCAL UNION NO. 13, ORGANIZING/LABOR BARGAINING AGREEMENT

Signed this 14th day of June, 2004.

_Gary Taber_ / Signature
Gary Taber / Print Name
President / Title
GT STONEWORKS INC / Company
15 To FOOTHILL DR / Address
Boulder City NV 89005 / City, State, Zip
702-294-4117 / Fax
702-616 [illegible]

_Ray S. K._ / Signature
Raymond Keen
President
B.A.C. Local #13, Nevada
3540 S. Highland
Las Vegas, Nevada 89103

Larry O'Leary
Secretary/Treasurer
B.A.C. Local 013, Nevada
3540 S. Highland
Las Vegas, Nevada 89103

RE PAGE
TILE, MARBLE, STONE AND TERRAZZO
CONTRACTORS ASSOCIATION

3rd day of March, 2001.

_____ / Signature
Nick G. Morreale / Printed Name
_____ / Signature
_____ / Printed Name

APPENDIX B

Members of the Nevada Tile, Marble, Stone and Terrazzo Contractors Association as of January 29, 2001

Superior Tile and Marble, Inc.
T. Nicholas and Company
Western Tile & Marble Contractors, Inc.

22

_____/Union     _____/Management
Initial          Initial

_____/Union     _____/Management
Initial          Initial

G T STONEWORKS INC
299373 0003 NV 1

## SIGNATURE PAGE

### B.A.C. LOCAL UNION NO. 13, ORGANIZING/LABOR BARGAINING AGREEMENT

Signed this 31 day of March, 2003.

_____          *Raymond Keen* (signature)
Signature                         Raymond Keen
                                  President
_____          B.A.C. Local #13, Nevada
Print Name                        3640 S. Highland
                                  Las Vegas, Nevada 89103
_____
Title

_____
Company                           Larry O'Leary
                                  Secretary/Treasurer
_____          B.A.C. Local #13, Nevada
Address                           3640 S. Highland
                                  Las Vegas, Nevada 89103
_____
City, State, Zip

_____          _____
Phone                             Fax

SIGNATURE PAGE
NEVADA TILE, MARBLE, STONE AND TERRAZZO
CONTRACTORS ASSOCIATION

Signed this 3rd day of March, 2003.

Signature  *President*            Signature  *Nicholas G. Mamula — Pres.*
           *Superior Tile & Marble*
_____          _____
Robert F. Herman                  Nick G. Mamula

_____          _____
Signature                         Signature
Mark E. Fenstermaker              Printed Name

SFRDOCS:30349037.1 038043.1000        22        Initial  Union  Management

RECEIVED
MAR 17 2004
COLLECTIVE BARGAINING SERVICES

APPENDIX "A"   LOCAL 13 NEVADA   EFFECTIVE: 03/01/03-02/28/04

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def. Con. en. Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 60% | 300 | $9.77 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $13.70 |
| 2nd Period | 70% | 300 | $11.40 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $15.33 |
| 3rd Period | 80% | 300 | $13.02 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $16.95 |
| 4th Period | 85% | 300 | $13.84 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $17.77 |
| 5th Period | 90% | 300 | $14.65 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $18.58 |
| Finisher Journey | | $16.28 | $16.28 | 3.50% | $3.90 | $1.00 | $1.18 | $0.07 | $0.00 | $0.28 | $0.03 | $22.74 |

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def. Con. en. Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 50% | 750 | $12.72 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $19.53 |
| 2nd Period | 60% | 750 | $15.26 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $22.07 |
| 3rd Period | 70% | 750 | $17.80 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $24.61 |
| 4th Period | 80% | 750 | $20.34 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $27.15 |
| 5th Period | 85% | 750 | $21.62 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $28.43 |
| 6th Period | 90% | 750 | $22.89 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $29.70 |
| Marble Mason | | $25.43 | $25.43 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $32.24 |
| Tile Setter | | $23.74 | $23.74 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $30.55 |

BAC LOCAL 13 NEVADA            NV TILE, MARBLE STONE AND            CONTRACTOR
                               TERRAZZO CONTRACTORS ASSOCIATION

_____  ____   _____  ____   _____  ____
Signature               Date   Signature               Date   Signature               Date

_____  ____   _____  ____   _____  ____
Print Name              Date   Print Name/ Title       Date   Print Name/ Title       Date

_____  ____   _____  ____   _____  ____
Signature               Date   Print Name/ Title       Date   Signature               Date

_____  ____   _____  ____   _____  ____
Print Name              Date   Print Name/ Title       Date   Print Name/ Title       Date

APPENDIX C

Designated Arbitrators

John Kagel (650) 325-0389
Sara Adler (310) 474-5170
Chuck Askin (925) 934-1929
Michael Prihar (818) 360-2091
Ken Perea (858) 756-6513
Fred Horowitz (310) 829-6064

Initial _____ Union _____ Management

APPENDIX "A"   LOCAL 13 NEVADA   EFFECTIVE: 03/01/05-02/28/06

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def. Con. en. Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 60% | 300 | $10.49 | 3.50% | $4.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $14.82 |
| 2nd Period | 70% | 300 | $12.24 | 3.50% | $4.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $16.57 |
| 3rd Period | 80% | 300 | $13.98 | 3.50% | $4.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $18.31 |
| 4th Period | 85% | 300 | $14.86 | 3.50% | $4.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $19.19 |
| 5th Period | 90% | 300 | $15.73 | 3.50% | $4.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $20.06 |
| Finisher Journey | | | $17.48 | 3.50% | $4.30 | $1.00 | $1.30 | $0.11 | | $0.32 | $0.03 | $24.54 |

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def. Con. en. Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 50% | 750 | $13.40 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $21.39 |
| 2nd Period | 60% | 750 | $16.08 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $24.07 |
| 3rd Period | 70% | 750 | $18.76 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $26.75 |
| 4th Period | 80% | 750 | $21.44 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $29.43 |
| 5th Period | 85% | 750 | $22.78 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $30.77 |
| 6th Period | 90% | 750 | $24.12 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $32.11 |
| Marble Mason | | | $26.80 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $34.79 |
| Tile Setter | | | $24.97 | 3.50% | $4.30 | $1.23 | $2.00 | $0.11 | $0.00 | $0.32 | $0.03 | $32.96 |

BAC LOCAL 13 NEVADA      NV TILE, MARBLE STONE AND      CONTRACTOR
                         TERRAZZO CONTRACTORS ASSOCIATION

Signature ___ Date ___   Signature ___ Date ___   Signature ___ Date ___

Print Name ___ Date ___  Print Name/ Title ___ Date ___   Print Name/ Title ___ Date ___

Signature ___ Date ___   Print Name/ Title ___ Date ___   Signature ___ Date ___

Print Name ___ Date ___  Print Name/ Title ___ Date ___   Print Name/ Title ___ Date ___

---

APPENDIX "A"   LOCAL 13 NEVADA   EFFECTIVE: 03/01/04-02/28/05

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def. Con. en. Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 60% | 300 | $10.07 | 3.50% | $4.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $14.20 |
| 2nd Period | 70% | 300 | $11.75 | 3.50% | $4.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $15.88 |
| 3rd Period | 80% | 300 | $13.42 | 3.50% | $4.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $17.55 |
| 4th Period | 85% | 300 | $14.26 | 3.50% | $4.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $18.39 |
| 5th Period | 90% | 300 | $15.10 | 3.50% | $4.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $19.23 |
| Finisher Journey | | | $16.78 | 3.50% | $4.10 | $1.00 | $1.24 | $0.09 | $0.00 | $0.30 | $0.03 | $23.54 |

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def. Con. en. Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 50% | 750 | $12.99 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $20.39 |
| 2nd Period | 60% | 750 | $15.58 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $22.98 |
| 3rd Period | 70% | 750 | $18.18 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $25.58 |
| 4th Period | 80% | 750 | $20.78 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $28.18 |
| 5th Period | 85% | 750 | $22.07 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $29.47 |
| 6th Period | 90% | 750 | $23.37 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $30.77 |
| Marble Mason | | | $25.97 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $33.37 |
| Tile Setter | | | $24.22 | 3.50% | $4.10 | $1.13 | $1.75 | $0.09 | $0.00 | $0.30 | $0.03 | $31.62 |

BAC LOCAL 13 NEVADA      NV TILE, MARBLE STONE AND      CONTRACTOR
                         TERRAZZO CONTRACTORS ASSOCIATION

Signature ___ Date ___   Signature ___ Date ___   Signature ___ Date ___

Print Name ___ Date ___  Print Name/ Title ___ Date ___   Print Name/ Title ___ Date ___

Signature ___ Date ___   Print Name/ Title ___ Date ___   Signature ___ Date ___

Print Name ___ Date ___  Print Name/ Title ___ Date ___   Print Name/ Title ___ Date ___

APPENDIX "A"    LOCAL 13 NEVADA        EFFECTIVE: 03/01/03-02/28/04

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def Con en Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 60% | 300 | $9.77 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $13.70 |
| 2nd Period | 70% | 300 | $11.40 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $15.33 |
| 3rd Period | 80% | 300 | $13.02 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $16.95 |
| 4th Period | 85% | 300 | $13.84 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $17.77 |
| 5th Period | 90% | 300 | $14.65 | 3.50% | $3.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.03 | $18.58 |
| Finisher Journey | | $16.28 | $16.28 | 3.50% | $3.90 | $1.00 | $1.18 | $0.07 | $0.00 | $0.28 | $0.03 | $22.74 |

| Skill Level | | Work Hours | Wage | Dues Chk-Off | Health & Welfare | Def Con en Local | IU Pension | Local 13 ompliance | Local 13 Training | IMI Training/ Promo | Contract Admin Fund | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Period | 50% | 750 | $12.72 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $19.53 |
| 2nd Period | 60% | 750 | $15.26 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $22.07 |
| 3rd Period | 70% | 750 | $17.80 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $24.61 |
| 4th Period | 80% | 750 | $20.34 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $27.15 |
| 5th Period | 85% | 750 | $21.62 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $28.43 |
| 6th Period | 90% | 750 | $22.89 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $29.70 |
| Marble Mason | | $25.43 | $25.43 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $32.24 |
| Tile Setter | | $23.74 | $23.74 | 3.50% | $3.90 | $1.03 | $1.50 | $0.07 | $0.00 | $0.28 | $0.03 | $30.55 |

BAC LOCAL 13 NEVADA             NV TILE, MARBLE STONE AND             CONTRACTOR
                                TERRAZZO CONTRACTORS ASSOCIATION

Signature _____ Date _____   Signature _____ Date _____   Signature _____ Date _____

Print Name _____ Date _____  Print Name/Title _____ Date _____  Print Name/Title _____ Date _____

Signature _____ Date _____   Print Name/Title _____ Date _____  Signature _____ Date _____

Print Name _____ Date _____  Print Name/Title _____ Date _____  Print Name/Title _____ Date _____

NV 03-16

APPENDIX C

Designated Arbitrators

John Kagel (650) 325-0389
Sara Adler (310) 474-5170
Chuck Askin (925) 934-1929
Michael Prihar (818) 360-2091
Ken Perea (858) 756-6513
Fred Horowitz (310) 829-6064

Initial    Union    Management